## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| **SPARTA INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO: 1:19-cv-00260** |
| | ) | |
| **GUARDIAN SERVICES, INC. d/b/a GUARDIAN TERMITE & PEST SERVICE, STEVEN MARCRUM, JASON OUTLAW, EVEREST NATIONAL INSRUANCE COMPANY, TERMINIX INTERNATIONAL INC., and THE TERMINIX INTERNATIONAL COMPANY, LP.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, SPARTA Insurance Company, and hereby files this Complaint for Declaratory Judgment, as follows:

## Jurisdiction and Venue

1.     This action for declaratory relief is brought by SPARTA Insurance Company ("SPARTA") pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the

Federal Rules of Civil Procedure to determine the rights, duties, status, and legal relations of the parties under the insurance policies described below.

2.     This Court has original jurisdiction in this matter under 28 U.S.C. § 1332(a).   This controversy is between citizens of different states; thus, there is a complete diversity of citizenship between the parties.

3.     The amount in controversy exceeds $75,000, exclusive of interest and costs.   The SPARTA policies described below provide $1,000,000 per occurrence liability limits.   In the underlying arbitration, claimant Jason Outlaw alleges damages in excess of $175,000.   Accordingly, the "monetary value of the object of the litigation" exceeds the $75,000 statutory threshold.   See Federated Mut. Ins. Co. v. McKinnon Motors, 329 F.3d 805, 807 (11th Cir. 2003) ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.")

4.     Venue is proper under 28 U.S.C. §1391(b)(1) because, on information and belief, all Defendants reside in this District.   Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, or omissions giving rise to this dispute took place in this District.

## Nature of the Action

5.     SPARTA seeks a judicial declaration of the rights, duties, and liabilities of the parties under insurance policies issued to Guardian Services, Inc.

("Guardian") with respect to arbitration claims brought by claimant Jason Outlaw ("Outlaw") against Guardian and its owner Steve Marcrum ("Marcrum").

6.    SPARTA, as set out in detail below, issued policies of Commercial General Liability Insurance to Guardian for the coverage period **February 11, 2009 to February 16, 2013**.

7.    Guardian provided termite inspection and treatment services to Outlaw's residence in Mobile, Alabama from 2009 to 2016.  Outlaw alleges, among other things, that Guardian failed to properly treat and inspect his residence, resulting in termite infestations and damage to his home.

8.    The claims made the subject of the underlying arbitration were first presented to Guardian and Marcrum in May 2017.

9.    SPARTA was not placed on notice of Outlaw's claims until April 22, 2019, or nearly two years after those claims were first presented to Guardian and Marcrum.

10.    SPARTA was not given timely notice of Outlaw's May 2017 claims. Consequently, SPARTA had no opportunity to investigate those claims or gather information while the relevant facts were still fresh and readily available.

11.    An actual and justiciable controversy exists whether SPARTA owes a duty to defend or indemnify Guardian or Marcrum in the underlying arbitration.

3

SPARTA asserts it owes no duty to defend or indemnify any defendant in the underlying arbitration for the reasons set forth herein.

### The Parties

12.     SPARTA is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.   SPARTA issued policies of insurance to Guardian for the coverage periods February 11, 2009 to February 16, 2013.

13.     Upon information and belief, Guardian Services, Inc. is a corporation organized under the laws of the State of Alabama, with its principal place of business in Baldwin County, Alabama.

14.     Upon information and belief, Steven Marcrum ("Marcrum") is an adult citizen residing in Baldwin County, Alabama.   He served as manager and owner of Guardian at all times relevant to the matters herein.

15.     Jason Outlaw ("Outlaw") initiated the underlying arbitration action, and, as such, may claim an interest relating to the subject of this action.   Upon information and belief, he resides in Mobile County, Alabama.

16.     Upon information and belief, Everest National Insurance Company ("Everest") has assumed the defense of Guardian and Mr. Marcrum in the underlying arbitration, pursuant to policies of insurance for the coverage periods

February 16, 2013 to February 16, 2016.   Upon information and belief, Everest is incorporated under the laws of the State of New Jersey.   Upon information and belief, its principal place of business is in Liberty Corner, New Jersey.

17.   Upon information and belief, Terminix International, Inc. is a co-defendant in the underlying arbitration.   Terminix International, Inc. is incorporated in the State of Delaware and has its principal place of business in Memphis, Tennessee.

18.   Upon information and belief, The Terminix International Company, LP is a foreign limited partnership and co-defendant in the underlying arbitration. As explained in paragraphs 19 and 20 below, The Terminix International Company, L.P. is a citizen of Delaware and Tennessee.

19.   Upon information and belief, The Terminix International Company, L.P. has one general partner, Terminix International, Inc. and one limited partner, ServiceMaster Consumer Services Limited Partnership ("ServiceMaster").   As explained in paragraph 17, general partner Terminix International, Inc. is a citizen of Delaware and Tennessee.

20.   Upon information and belief, ServiceMaster (the limited partner of The Terminix International Company, LP) is a Delaware limited partnership, with its principal place of business in Memphis, Tennessee.   ServiceMaster has one

general partner, SMCS Holdco II, Inc., and two limited partners, SMCS Holdco II, Inc. and The ServiceMaster Company, LLC.   SMCS Holdco II, Inc. is a Delaware corporation and The ServiceMaster Company, LLC is a Delaware limited liability company, both having their principal places of business in Tennessee.

21.    For purposes of this Complaint, Defendants Terminix International, Inc. and The Terminix International Company, LP are referred to collectively as "Terminix."

## The SPARTA Policies

22.    SPARTA issued four policies of Commercial General Liability Insurance to Guardian: [1]

- Policy Number 011GL 00218, policy period February 11, 2009 to February 11, 2010 (attached hereto as Exhibit "A"),

- Policy Number 011GL 00898, policy period February 11, 2010 to February 16, 2011 (attached hereto as Exhibit "B"),

- Policy Number 011GL 01789, policy period February 16, 2011 to February 16, 2012, (attached hereto as Exhibit "C"), and

---

[1]    The relevant provisions of the four Sparta Policies are, for purposes of this Complaint for Declaratory Judgment, substantially identical.   This Complaint for Declaratory Judgment will refer collectively to "the Policies", except in those instances where relevant differences exist between each Policy.   For ease of reference, SPARTA will cite to the pages of the 2012 Policy (Ex. D) in this Complaint.

- Policy Number 011GL 04633, policy period February 16, 2012 to February 16, 2013 (attached hereto as Exhibit "D").

## Outlaw's Arbitration Demand and Notice to SPARTA

23.    On May 25, 2017, Outlaw submitted a Demand for Arbitration to the American Arbitration Association, asserting several claims against Guardian and Marcrum.   (See "Arbitration Demand", attached hereto as Exhibit "E").

24.    Outlaw's Arbitration Demand alleges claims for fraud, negligence, professional negligence, breach of contract, and equitable relief relating to Guardian and Marcrum's "failure to disclose problems with, make proper recommendations for, and provide proper termite prevention."   (Ex. E).

25.    Outlaw, through his attorneys, placed Guardian and Marcrum on notice of his arbitration claims by letter of May 26, 2017.   (See 5.26.17 letter, attached hereto as Exhibit "F").

26.    On November 30, 2017, Outlaw submitted a detailed "Statement of Claim" in the underlying arbitration.   Outlaw's "Statement of Claim" alleged six counts against Guardian and Mr. Marcrum, including 1) fraudulent misrepresentation/suppression, 2) negligence, recklessness, and negligence per se, 3) negligent hiring, training, supervision and retention, 4) breach of contract, 5)

7

equitable relief, including unjust enrichment, and 6) equitable relief pursuant to the "made whole" doctrine.   (See "Statement of Claim", attached as Ex. "G").

27.    Guardian and/or Marcrum did not place SPARTA on notice of Outlaw's arbitration claims in 2017.

28.    Guardian and/or Marcrum did not place SPARTA on notice of Outlaw's arbitration claims in 2018.

29.    On April 22, 2019, SPARTA was placed on notice of Outlaw's claims by Everest National Insurance Company.   Everest – which is defending Guardian and Marcrum in the underlying arbitration – requested in its April 22, 2019 email that SPARTA contribute to the defense of the arbitration claims.

30.    On May 8, 2019, SPARTA wrote to Guardian and Marcrum advising of its notice of Outlaw's claims, and also requesting relevant documents and facts regarding the arbitration claims.   (See 5.8.19 letter, attached as Ex. H).

31.    SPARTA'S letter advised Guardian and Mr. Marcrum of the following essential policy conditions:

**2.    Duties In The Event of Occurrence, Offense, Claim Or Suit**

   a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

       (1)    How, when and where the "occurrence" or offense took place;

       (2)    The names and addresses of any injured persons and witnesses; and

       (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

       (1)    Immediately record the specifics of the claim or "suit" and the date received; and

       (2)    Notify us as soon as practicable.

       You must also see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

       (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

       (2)    Authorize us to obtain records and other information;

       (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; . . .

32.   On May 30, 2019, SPARTA sent another letter to Guardian and Marcrum.  In its May 30, 2019 letter, SPARTA expressly reserved its right to disclaim coverage on the basis of late notice. (See 5.30.19 letter, attached as Ex. I).

## Allegations in the Underlying Arbitration

**SPARTA Coverage Period – February 11, 2009 to February 16, 2013**

33.   The coverage period for the SPARTA Policies described above began on February 16, 2009.

34.   In his Statement of Claims, Outlaw states he entered into a contract with Guardian on April 29, 2009 for termite protection services.  (Ex. G, ¶ 2).

35.   Outlaw alleges: "Guardian completed an Official Wood Infestation Inspection Report ("WIIR") on April 29, 2009, which indicates evidence of prior subterranean termite infestation in the sills, floor and joists, and previous infestation of powder post beetles in the floor and joists."  (Ex. G, ¶ 11).  Outlaw further alleges: "Records reflect that Guardian did not perform *any* treatment at the house in 2009."  (Ex. G, ¶ 13).

36.   Outlaw does not allege that any termite activity, or resulting damage, occurred at his residence in 2009, 2010, or 2011.  (Ex. G, *passim*).

37.   Outlaw alleges the following fraudulent acts in 2012:

Guardian manipulated [Mr. Outlaw] to switch him from the 2009 Retreat and Repair contract to a Retreat only contract in 2012 by falsely

10

representing that the 2009 Repair Contract expired on April 7, 2012 but that service could be restarted if [he] paid for the renewal fee and $300 for a new termite treatment.

There is no explanation for the change in contracts other than that Guardian discovered an active infestation in the house and sought to relieve themselves of the duty to repair the termite infestation damage discovered and the associated costs, and to relieve themselves from the costs of any future termite damage that would result from their failure to properly treat the house and perform the terms of the termite protection service agreement.

(Ex. G, ¶¶ 18-19).

38.     The SPARTA coverage period ended on February 16, 2013.

**Everest Coverage Period – February 16, 2013 to February 16, 2016**

39.     The Everest Policies' coverage period began on February 16, 2013.

40.     Outlaw alleges he discovered a termite infestation at his house on November 6, 2013.   (Ex. G, ¶22).   Per his Statement of Claims, this is the first time Outlaw discovered any termite activity.   (Ex. G, *passim*).

41.     In response, "Guardian inspected [Outlaw's] home and confirmed an active Formosan termite infestation and the inspector claimed to perform a spot treatment where the active infestation was."   (Ex. G, ¶22).

42.     Outlaw allegedly discovered another termite infestation on March 9, 2015.   Guardian treated the property with termiticide but noted that "repairs were not needed."   (Ex. G, ¶22).

11

43.    Outlaw alleges:

Each time that a termite infestation was discovered at [Outlaw's] home, Guardian performed a **spot treatment.**  Records indicate that these were the only treatments that Guardian applied at [Outlaw's] home. . . . [S]pot treatments are not intended to protect an entire structure from termite infestation, and the use of spot treatments in lieu of a conventional treatment must be specified in the termite protection service contract.

(Ex. G, ¶ 23) (emphasis added).

**Discovery of Termite Damage**

44.    Outlaw alleges that termite damage was discovered on April 11, 2016. Specifically: "On April 11, 2016, Guardian inspected the house and noted that the house had termite damage inside of the home, extensive termite damage in the crawlspace, wood debris and insulation debris in the crawlspace, and that there were no visible signs of active termite infestation."   (Ex. G, ¶ 22).

45.    On September 12, 2016, Guardian sold its customer accounts, including Outlaw's account, to Terminix.   (Ex. G, ¶ 27).   Terminix was responsible for treatment at Outlaw's residence on dates thereafter.   (Ex. G, ¶¶ 28-33, 40).

46.    On February 3, 2017, Mr. Outlaw filed a complaint with the Alabama Department of Agriculture and Industries ("ADAI") and requested "that state inspectors inspect the house to determine whether Guardian or Terminix had

provided termite protection services in accordance with the contract and state law." (Ex. G, ¶ 34).

47.     On February 27, 2017, an ADAI inspection allegedly revealed termite damage in the interior and exterior of Outlaw's residence. The ADAI also reportedly found "several failures of proper termite treatment standards."   (Ex. G, ¶ 35).

48.     On May 25, 2017, Outlaw submitted his Arbitration Demand, asserting claims against Guardian and Marcrum for fraud, negligence, professional negligence, breach of contract, and equitable relief.   (Ex. E).

**SPARTA Polices – Duties and Conditions for Coverage**

49.     The SPARTA Policies require insureds, as conditions precedent for coverage, to provide timely notice of any claims or suits[6] and to cooperate with SPARTA in its coverage investigations.

50.     Specifically, the SPARTA Policies contain the following conditions which must be met before coverage applies:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.     Duties In The Event of Occurrence, Offense, Claim Or Suit**

---

[6]     The SPARTA Policies expressly define "suit" to include "an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent." (Ex. D at _029).

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

   (1)   How, when and where the "occurrence" or offense took place;

   (2)   The names and addresses of any injured persons and witnesses; and

   (3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

   (1)   Immediately record the specifics of the claim or "suit" and the date received; and

   (2)   Notify us as soon as practicable.

   You must also see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

   (1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2)   Authorize us to obtain records and other information;

   (3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; . . .

14

(Ex. D at _024–25).

51.     SPARTA has no duty to defend Guardian or Marcrum in the underlying arbitration because they failed to provide timely notice to SPARTA of Outlaw's claims.   SPARTA did not receive notice of Outlaw's claims until April 22, 2019.   Outlaw made his arbitration claims against Guardian and Marcrum in May 2017, nearly two years before notice was first provided to SPARTA.

52.     SPARTA has no duty to defend or indemnify Guardian and/or Marcrum in the underlying arbitration to the extent Guardian and/or Marcrum have failed to provide information and documents requested by SPARTA and have failed to assist SPARTA with respect to the claims and incidents made the basis of the underlying arbitration.

53.     SPARTA has no duty to defend or indemnify Guardian and/or Marcrum if all duties and conditions contained within the Policies and/or created by Alabama law have not been fully satisfied.

54.     SPARTA seeks a determination from the Court regarding whether Guardian and/or Marcrum met the terms and conditions for coverage under the SPARTA Policies, and whether SPARTA has any obligation to defend or indemnify any party in the underlying arbitration.

## SPARTA Policies – The Insuring Agreements

55.    SPARTA further avers that the SPARTA Policies do not provide coverage to Guardian and/or Marcrum under the Insuring Agreements with respect to the claims and damages asserted in the underlying arbitration.

56.    Guardian and/or Marcrum carry the burden of proving coverage exists under the SPARTA Policies.   Guardian and/or Marcrum carry the burden of proving facts and damages alleged in the underlying arbitration fall within the Insuring Agreements of the SPARTA Policies.

57.    The Insuring Agreements of the SPARTA Policies extend coverage only to "bodily injury" and "property damage" that occurs during the SPARTA Policy period(s) – February 11, 2009 to February 16, 2013 – and is caused by an "occurrence" as defined by the SPARTA Policies.   (Ex. D at _015).

58.    The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   (Ex. D at _028).

59.    The SPARTA Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."   (Ex. D at _027).

60.     The SPARTA Policies define "property damage" to mean:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Ex. D at _029).

61.     SPARTA owes no duty to defend or indemnify any party in the underlying arbitration with respect to damages that do not constitute "bodily injury" or "property damage" as defined in the SPARTA Policies.

62.     SPARTA owes no duty to defend or indemnify any party in the underlying arbitration with respect to damages not caused by an "occurrence" resulting in covered damages incurred in the SPARTA Policy periods ending February 16, 2013.

63.     No coverage is provided under any SPARTA Policy unless covered damage occurred during SPARTA's Policy periods ending February 16, 2013. SPARTA owes no duty to defend or indemnify any party in the underlying arbitration insofar as claims are made for damages that did not occur before February 16, 2013.

64.    Outlaw does not allege any covered "bodily injury" or "property damage" that occurred before SPARTA's Policies expired on February 16, 2013. As such, SPARTA does not owe coverage under the SPARTA Policies.

65.    Even if Outlaw's claims can be construed to allege covered "bodily injury" or "property damage" that occurred before SPARTA Policies expired, coverage is barred by exclusions contained within the Policies, as set out below.

66.    SPARTA respectfully requests this Court enter a declaratory judgment that SPARTA, under the Insuring Agreements, has no obligation to Guardian or Marcum with respect to the underlying arbitration, and is not required to defend or indemnify Guardian or Marcum in the underlying arbitration.

## Policy Exclusions

67.    Even if the facts and damages made the basis of the underlying arbitration fell within the Insuring Agreements of the Policies, coverage would be barred by policy exclusions.

68.    The Policies each contain an exclusion for "Expected or Intended Injury" which provides that coverage does not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Ex. D at _016).

69.    The Policies each contain exclusions for "Damage to Impaired Property Or Property Not Physically Injured" that limit the coverage provided

18

under certain circumstances when damages arise from work or products that are defective, deficient, or inadequate. (Ex. D at _019).

70.    The Policies each contain an exclusion for "Damage to Property" (as modified by Endorsement GL RPG PEST 02 08 08) which provides that coverage does not apply to:

"Property Damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

(Ex. D at _054).

71.    The Policies contain an exclusion for "Damage to Your Product" which provides that coverage does not apply to "'property damage' to 'your product' arising out of it or any part of it.'" (Ex. D at _019).

72.    The Policies contain an exclusion for "Damage to Your Work" which provides that coverage does not apply to:

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

19

> This exclusion does not apply if the damaged work or the work
> out of which the damage arises was performed on your behalf
> by a subcontractor.

(Ex. D at _019).

73.    SPARTA relies on these and any other exclusions and limitations to coverage which apply to the facts and damages alleged in the underlying arbitration.

## **Endorsements**

74.    The SPARTA Policies includes various endorsements that specifically pertain to pest control businesses such as Guardian, including the "Property Damage Extension for Inspections" endorsement and the "Property Damage Extension for Treatment/Renewal" endorsement, discussed below.

## I.    PROPERTY DAMAGE EXTENSION FOR INSPECTIONS (GL RPG PEST 04 08 08)

75.    The "Property Damage Extension for Inspections" endorsement provides, in relevant part:

### A.    COVERAGE

#### 1.    Insuring Agreement

> We will pay those sums which the insured becomes legally
> obligated to pay as damages because of "property
> damage", caused by an insured's failure to identify the
> present or past existence of "wood destroying organisms"

20

in the area(s) the Insured inspected on the date the Insured inspected the "real property" or "property damage" existing prior to the inspection, described in the "inspection contract", and to which this insurance applies.

\* \* \*

The "property damage" must have been caused by a "wood destroying organism" specified in the "inspection contract", and the "property damage" must have been visible, accessible and in existence at the time of the inspection.

This replaces and is not in addition to any other property damage coverage that might apply under this policy.

**2.  Exclusions**

This insurance does not apply to:

a.  Any cost or expense to treat, re-treat, inspection or re-inspection for "wood destroying organisms".

b.  Any act, error or omission an insured committed with a fraudulent, dishonest, criminal or malicious purpose or intent.

c.  Inspections made to renew "wood destroying organism" treatment warranties or guarantees that are not covered by this endorsement.

d.  Any "inspection contract" with an inspection date prior to the effective date of the policy, as shown in the Declarations page of the policy, or after the termination date of the policy.

\* \* \*

**D.  ADDITIONAL DEFINITIONS**

1.  "Inspection contract" means a contract between you and your client, written and dated by the insured in

21

> conjunction with a "wood destroying organism" inspection which was conducted solely in anticipation of the sale, refinancing or purchase of "real property". The "inspection contract" must be written on the form prescribed by the State or other regulatory agency, if any.

(Ex. D at _058).

76.     This endorsement is inapplicable to Outlaw's claims.   Outlaw does not allege "property damage" resulting from Guardian's failure to identify termites or pre-existing "property damage" at the time of Guardian's April 29, 2009 inspection (i.e., an "inspection which was conducted solely in anticipation of the sale, refinancing or purchase of 'real property'").   (See Ex. G, *passim*).

77.     Even if such claims are alleged, one or more of the exclusions of the endorsement apply to bar coverage, including but not limited to, coverage for acts committed with "fraudulent, dishonest, criminal or malicious purpose or intent".

78.     The "Property Damage Extension for Inspections" endorsement (as modified by Form MAN-GL (01/02)) contains several conditions that must be satisfied as conditions precedent to coverage, including but not limited to the following:

> 6.     You must maintain and have all books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information regarding the inspection of any "real property" at any time a claim is made.

22

We may examine your books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information at any time a claim is made. Failure to maintain such records; including but not limited to books, reports, records, including the "inspection contract", any report required by statute, ordinance or regulation of any federal, state or local government, and all information regarding the inspection of any "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.

* * *

8.    If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, the coverage provided by this endorsement will be excess over any other insurance, whether primary, excess, contingent or on any other basis.

(Ex. D at _046, 059).

79.    To the extent Guardian and/or Marcrum have not maintained records related to the "inspection contract" for services at Outlaw's residence, SPARTA owes no coverage under the endorsement.

## II. PROPERTY DAMAGE EXTENSION FOR TREATMENT/RENEWAL (GL RPG PEST 05 08 08)

80.    The "Property Damage Extension for Treatment/Renewal" endorsement provides, in relevant part:

### A. COVERAGE

#### 1. Insuring Agreement

We will pay those sums which the insured becomes legally obligated to pay as damages   because  of  "property

23

damage" to "real property", caused by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Bores; Wood Boring Beetles; and/or insects as specified in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies.

* * *

This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

**2.    Exclusions**

This insurance does not apply to:

a.    The expense of treatment, retreatment, inspection, or re-inspection of any "real property".

b.    Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

c.    Any "property damage" occurring before the "actual treatment" date as shown in your "treatment contract" or after the end of the policy period.

d.    Any "property damage" not caused by: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Bores; Wood Boring Beetles; and/or other insects identified in the "treatment contract".

e.    Any spot or partial treatments.

f.    Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

* * *

24

## D.   ADDITIONAL DEFINITIONS

1.   "Actual treatment" means a complete chemical treatment, of the entire "real property", according to the "directions for use" as outlined in the "treatment contract" for the eradication of Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Bores; Wood Boring Beetles; and/or other insects identified and listed on the "treatment contract".   "Actual treatment" does not include spot or partial treatments.

\* \* \*

3.   "Treatment contract" means a written contract between you and your client, issued and dated by you in conjunction with an "actual treatment".   "Treatment contract" includes the graph or description of "real property".

5.   "Renewal inspection" means the issuance of a written report regarding the physical inspection of the entire "real property' conducted by you within each twenty-four (24) month period after the initial "actual treatment" described in the "treatment contract."

(Ex. D at _60–61).

81.   This endorsement is inapplicable because Outlaw does not allege any "property damage" that occurred after an "actual treatment" by Guardian.   Instead, Outlaw alleges that Guardian, at all times, failed to provide a complete treatment on Outlaw's property, including by its use of "spot treatments."   (See Ex. G, *passim*).

82.   Even if such claims are alleged, one or more of the exclusions of the endorsement apply to bar coverage, including but not limited to, coverage for acts

committed with "fraudulent, dishonest, criminal or malicious purpose or intent", coverage for "property damage" occurring after SPARTA's Policy period ended on February 16, 2013, and coverage for damages arising out of "spot or partial treatments".

83.   The "Property Damage Extension for Treatment/Renewal" endorsement contains several conditions which must be satisfied as conditions precedent to coverage, including but not limited to the following:

> 4.   You must maintain the "treatment contract" and all the written, detailed records of any and all work performed by you from the date the "actual treatment" started.
>
> We may examine your "treatment contract" and all information regarding the "actual treatment" and the "renewal inspection" of the "real property" at any time after the date of "actual treatment".
>
> Failure to maintain such records; including but not limited to the "Treatment Contract", information regarding the "actual treatment" of the "real property", any report required by statute, ordinance or regulation of any federal, state or local government, or other pertinent information regarding the "actual treatment" of the "real property", and/or not make them available to us will result in the denial of coverage for any claim or suit.
>
> 6.   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, the coverage provided by this endorsement will be excess over any other insurance, whether primary, excess, contingent or on any other basis.

(Ex. D at _061).

84.    To the extent Guardian and/or Marcrum have not maintained records related to any "treatment contract", or any "actual treatment", regarding Outlaw's residence, SPARTA owes no coverage under the endorsement.

85.    SPARTA avers it owes no duty to defend or indemnify Guardian or Mr. Marcrum under the Insuring Agreements of the "Property Damage Extension for Inspections" endorsement or the "Property Damage Extension for Treatment/Renewal" endorsement.

86.    SPARTA seeks a determination by this Court regarding whether the Insuring Agreements of the above-referenced endorsements are triggered by the underlying arbitration.

## **Prayer for Relief**

87.    SPARTA maintains there is no coverage under the SPARTA Policies for the claims set out in the underlying arbitration; that the facts and damages alleged in the underlying arbitration are not within the terms of the Policies; and/or that said allegations are within the terms of the exclusions of the Policies; and/or that the conditions of the Policies have not been met by Guardian and/or Marcrum. Therefore, Guardian and/or Marcrum are not entitled to Policy benefits by way of defense or indemnity with respect to the underlying arbitration.

88.     A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the SPARTA Policies as applied to the claims brought against Guardian and/or Marcrum in the underlying arbitration.

**WHEREFORE, PREMISES CONSIDERED**, SPARTA respectfully requests the following relief:

a.      That this Court take jurisdiction of this Complaint;

b.      That this Court ORDER, ADJUDGE and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

c.      That the process of this Court be issued to Defendants as provided by law and the rules of this Court and that Defendants be ordered to respond to this petition for declaratory judgment within the time prescribed by law;

d.      That upon final hearing of this cause, this Honorable Court declares the rights, status, and legal relations of SPARTA and Defendants under said policies of insurance issued by SPARTA;

e.      That upon a final hearing of this cause, this Honorable Court will order, adjudge, declare, or decree that the Policies issued by SPARTA do not afford coverage for the claims brought against Guardian and/or Marcrum in the underlying

arbitration and that SPARTA has no duty to defend or indemnify Guardian and/or Marcrum under the Policies;

f.     That if SPARTA is mistaken in any special relief prayed for, then it prays for such other, further, or more general relief to which it may be entitled.

Respectfully submitted,

*/s/ Carol Ann Smith*
Carol Ann Smith, ASB-3485-T81C)

*/s/ Christopher J. Doty*
Christopher J. Doty, (ASB-8856-P76B)

*Attorneys for Plaintiff*

**SMITH & BAHAKEL, P.C.**
2000A SouthBridge Parkway, Suite 405
Birmingham, Alabama 35209
Tel:   205-802-2214
carolann@sblegalteam.com
chrisd@sblegalteam.com

**Defendants to be served via Certified Mail as Follows:**

Guardian Services, Inc.
12168 County Road 99
Lillian, Alabama 36549-5120

Mr. Steven Marcrum
12168 County Road 99
Lillian, Alabama 36549-5120

Mr. Jason Outlaw
205 Seminole Street
Mobile, Alabama 36606

Terminix International, Inc.
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, Alabama 36104

The Terminix International Company, LP
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, Alabama 36104

Everest National Insurance Company
c/o CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, Alabama 36104